A. TEIXEIRA & CO., INC.

v.

Antonio L. TEIXEIRA et al.

No. 95–167–Appeal.

Supreme Court of Rhode Island.

Sept. 11, 1997.

Joel D. Landry and Thomas F. Connors, Providence, for Plaintiff.

Kris Macaruso Marotti and Thomas A. Tarro, III, Warwick, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

BOURCIER, Justice.

In this matter we consider the corporate opportunity doctrine. The defendants, Antonio L. Teixeira (Antonio) and Armenio Teixeira (Armenio), appeal to this Court from a final judgment of the Superior Court following a jury verdict finding the defendants to have wrongfully taken a corporate opportunity from the plaintiff, A. Teixeira & Co., Inc. The final judgment imposed a constructive trust upon Armenio's shares of stock in a retail liquor store known as Mendon Liquors and awarded punitive damages to the plaintiff corporation in the amount of $20,000. The defendants here on appeal contend that the trial court should have granted directed verdicts [1] in their favor on the question of whether they had deprived the plaintiff of a corporate opportunity or, in the alternative, the court should have granted their motion for a new trial. The defendants additionally allege error with respect to the court's jury instruction on both the imposition of a constructive trust and punitive damages. We conclude that directed verdicts should have been granted, and we reverse the judgment of the trial court.[2] We need not address the alleged jury trial instruction issues.

## I

### The Facts

A. Teixeira Co., Inc. (plaintiff corporation or corporation), is a Rhode Island corporation formed in 1981 by six shareholders: Honorato Custodio, Artur Mota, Joaquim Duarte, Manuel Moitoso, Armenio Teixeira, and Antonio L. Teixeira. After having each made capital contributions of $20,000, the shareholders each received 100 shares of stock in the corporation. As acknowledged by all the shareholders, the corporation was formed for the purpose of acquiring a recently bankrupt retail liquor store known as Pop's Liquors, located in Cumberland, Rhode Island. After raising sufficient capital, the corporation realized its goal by purchasing Pop's Liquors at a public auction as well as then later having its liquor license transferred to the corporation. Shortly thereafter, in February of 1982, Pop's Liquors once again opened its doors for business, this time under the ownership of plaintiff corporation.

In terms of corporate organization and management structure, the trial record indicates that plaintiff corporation was not a model of clarity. According to its articles of incorporation that neglected to indicate that it was a close corporation pursuant to G.L. 1956 § 7-1.1-51, it had no board of directors, and Honorato Custodio (Custodio), one of its six shareholders, initially served as the president, vice-president, secretary, and treasurer of the corporation and indeed served in these capacities for all times relevant to this dispute. He also oversaw the day-to-day operation of Pop's Liquors along with his wife, both as salaried employees, and thereby acted, as he described it, as its general manager. At trial, however, Custodio disputed this apparent autocratic managerial status and maintained that all the other shareholders also actively participated from time to time in management decisions. Trial testimony from each of the shareholders bears out Custodio's contention and indicates that each of the shareholders played at least some role in the corporation's management of Pop's Liquors by offering advice on such matters as purchasing items for sale in the liquor store,

1. Pursuant to Rule 50 of the Superior Court Rules of Civil Procedure, as amended in 1995, motions for directed verdict are now designated as motions for judgment as a matter of law.

2. Previously this matter came before a hearing panel of this Court pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided. At that time the Court concluded that cause had been shown with respect to the principal claim against defendants Antonio and Armenio for having deprived plaintiff, A. Teixeira & Co., Inc., of a corporate opportunity but proceeded to decide the other issues raised in that appeal summarily. With respect to the corporate opportunity claim we placed the matter on the regular calendar for full briefing and oral argument. *See A. Teixeira & Co. v. Teixeira*, 674 A.2d 407 (R.I.1996). Now, following that written and oral argument we address the principal claim.

expanding sales and advertising campaigns, and, in general, acting as shareholders would act in a close corporation.

Ownership in the corporation remained straightforward despite one minor adjustment. In April of 1982 Artur Mota (Mota), one of the original shareholders, apparently skeptical of the loyalty of some of his fellow shareholders, offered to sell his stock to the corporation as required pursuant to the preemptive rights provision contained in the corporation's bylaws. After a formal rejection of Mota's offer by the corporation, Mota sold his shares to Joaquim Duarte (Duarte). From that point on, Duarte owned 200 shares, and the remaining four shareholders owned 100 shares each of corporate stock.

The flashpoint for this litigation apparently occurred sometime in early December of 1982. At that time Custodio learned that Mendon Liquors, a retail liquor store located in Cumberland within a few miles of Pop's Liquors, was going to be offered for sale. Custodio told the trial jury that he was extremely excited by the prospect of purchasing this competitor by way of plaintiff corporation and thereby increasing its share of the retail liquor market in the local area. According to Custodio, he first mentioned the news to Antonio, who allegedly seemed lukewarm to the idea of revealing the opportunity to the corporation's other shareholders. Custodio testified that Antonio suggested the idea of utilizing the opportunity for themselves. Despite Antonio's alleged suggestion, however, Custodio called a meeting of the corporation's shareholders and presented to them the idea of purchasing Mendon Liquors. Although the corporate minutes fail to reflect any such meeting, Custodio told the jury that all the shareholders, including Antonio and Armenio, agreed at that meeting that the purchase would be beneficial to the corporation and authorized Custodio as president of the corporation to undertake negotiations with the owners of Mendon Liquors.

Custodio's purchase of Mendon Liquors never materialized, however. His efforts to negotiate such a sale during the time between December 1982 and March 1983 were certainly less than enterprising. His trial testimony indicates that the negotiations never reached a formal or serious stage and that he concluded therefrom that the owners of Mendon Liquors seemed uninterested in his inquiries. Custodio's dawdling efforts on behalf of plaintiff corporation consisted of five or six telephone calls to a Mrs. Cabral, and a short visit with a Mr. Cabral, the owners of Mendon Liquors. According to Custodio, the negotiations were a "real puzzle" because Mrs. Cabral would not return his phone calls with sales terms or a price for the purchase and Mr. Cabral never called him regarding the sale price or terms, leading him to believe that the Cabrals were "stalling" him.

In late spring 1983 Antonio met with Custodio and told him that Mendon Liquors had been purchased earlier by Armenio and two other individuals. The trial evidence before the jury disclosed that Mendon Liquors was not sold until late June 1983 to Act, Inc., a Rhode Island corporation comprising one of plaintiff's shareholders, Armenio, along with his cousin, Caesar Teixeira, and Basil Silva, both nonshareholder third parties.

Believing that the sale of Mendon Liquors to Act, Inc., was, however, somehow initiated by Armenio and constituted a sharp deal, Custodio, Duarte, and Manuel Moitoso filed suit against the three defendants on behalf of plaintiff corporation. They alleged that the purchase of Mendon Liquors was a corporate opportunity that rightfully belonged to plaintiff corporation but that it had been diverted by defendants, one of whom was Armenio, a shareholder in plaintiff corporation. In plaintiff's view, not only did its inability to purchase Mendon Liquors appear to be the direct result of alleged secret negotiations by Armenio and Antonio with the Cabrals but that the imposition of a constructive trust as well as punitive damages was also an appropriate remedy. The trial justice and jury apparently agreed.

On appeal before this Court plaintiff corporation contends that the trial court's final judgment should be affirmed. Alternatively,

defendants contend that the doctrine of corporate opportunity was improperly applied in this instance. The defendants assert that plaintiff corporation was not financially able to acquire Mendon Liquors and had abandoned its efforts to purchase Mendon Liquors by its less than animated efforts to negotiate with the Cabrals.

## II

### Analysis

■ The plaintiff's claim is premised on what has come to be known as the doctrine of corporate opportunity. Stated succinctly, this legal doctrine prohibits a corporate fiduciary from diverting a business opportunity away from the corporation and taking it for himself or herself. See *Guth v. Loft, Inc.*, 5 A.2d 503 (Del.1939); Victor Brudney & Robert Charles Clark, *A New Look at Corporate Opportunities*, 94 Harv. L.Rev. 998 (1981); *see also Sladen v. Rowse*, 115 R.I. 440, 444, 347 A.2d 409, 412 (1975). To successfully state a claim then, a plaintiff must demonstrate that the defendant was a corporate fiduciary and that he or she diverted a corporate opportunity. In this case we must examine both of these requirements

### A. Corporate Fiduciaries

Our first concern, one inadequately addressed by the parties, is the question of whether either Armenio or Antonio as a minority shareholder in a corporation acting as if it were a close corporation was a corporate fiduciary. Corporate officers and directors of any corporate enterprise, public or close, have long been recognized as corporate fiduciaries owing a duty of loyalty to the corporation and its shareholders and thereby prohibited from diverting corporate opportunities to themselves. As the Supreme Court of Delaware explained in a leading case:

"While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders. A public policy, existing through the years, and derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers." *Guth*, 5 A.2d at 510.

This state as well has recognized that corporate officers and directors stand in a fiduciary capacity and are liable for taking corporate opportunities. *See Boss v. Boss*, 98 R.I. 146, 200 A.2d 231 (1964). Thus in *Sladen v. Rowse*, 115 R.I. 440, 347 A.2d 409 (1975), we found that a corporate officer and director charged with the responsibility of acquiring stock for the corporation could not, as a fiduciary, acquire the stock for himself without first offering it to the corporation. *See id.* at 444–45, 347 A.2d at 412–13. We explained, "[A] person holding those offices may not divert to himself opportunities which in justice belong to the corporation he serves." *Id.* at 444, 347 A.2d at 412; *see also Long v. Atlantic PBS, Inc.*, 681 A.2d 249 (R.I.1996).

■ In the instant case, however, Antonio and Armenio were neither corporate officers nor directors. Pursuant to the articles of incorporation there was no board of directors, Custodio held the positions of president, vice-president, treasurer, and secretary, and his own testimony indicated that he acted as the general manager of its liquor store's day-to-day operation.[3] It might therefore be argued that Antonio and Armenio, who were neither directors nor corporate officers, were not fiduciaries to the corporation. We do not believe, however, that the

---

**3.** Our task in determining whether the corporation here in question was in fact a close corporation would have been alleviated had the attorney who prepared the corporate articles of incorporation and corporate bylaws been mindful of G.L.1956 § 7–1.1–51.

question of who is a corporate fiduciary is subject to such a facile analysis. Officers and directors are naturally the most readily apparent fiduciaries of a corporation because of their unique relation to the corporation itself, its stockholders, and fellow directors or officers and not simply because of their titles. We are of the opinion that the term "fiduciary" is a broad concept that might correctly be described as "anyone in whom another rightfully reposes trust and confidence." Francis X. Conway, *The New York Fiduciary Concept in Incorporated Partnerships and Joint Ventures*, 30 Fordham L.Rev. 297, 312 (1961).

■ This Court has heretofore recognized that partners in a partnership owe one another a fiduciary duty, *see Sullivan v. Hoey*, 102 R.I. 487, 488, 231 A.2d 789, 790, (1967), and have additionally recognized that shareholders in a close held family corporation *may* have a fiduciary duty toward one another. *See Estate of Meller v. Adolf Meller Co.*, 554 A.2d 648, 651–52 (R.I.1989); *Fournier v. Fournier*, 479 A.2d 708, 712 (R.I.1984); *see also Donahue v. Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 328 N.E.2d 505, 515 (1975); *but see Dowell v. Bitner*, 273 Ill.App.3d 681, 210 Ill.Dec. 396, 403, 652 N.E.2d 1372, 1379 (1995). Today we conclude on the basis of the small number of shareholders in plaintiff corporation, the active participation by these shareholders in management decisions, and their close and intimate working relations, that the shareholders of plaintiff corporation, by acting as if they were partners, thus assumed a fiduciary duty toward one another and their corporation. This is not to say that all shareholders in all close corporations are under such a duty.[4] The shareholders may show by way of evidence that none of them intended such a partnership relationship, as evidenced by a stockholders' agreement or other relevant evidence. The existence of such a fiduciary duty is a fact-intensive inquiry.

Where as here, when the shareholders in a less-than-thirty-shareholder corporation act among themselves as partners in a business venture for mutual profit or loss, the law ought to treat them as fiduciaries.

## B. Corporate Opportunities

Having concluded that in this case the five shareholders were corporate fiduciaries, we must next examine the question of whether there was a breach of that fiduciary role in this case. The defendants maintain that they have not deprived plaintiff of a corporate opportunity.

There has been a great deal of judicial and scholarly debate on exactly what constitutes a forbidden corporate opportunity. Judges have formulated the "line of business" test, the "interest or expectancy" test, and the "fairness" test in order to assist in divining when a fiduciary may avail him or herself of a business opportunity and when it rightfully belongs to their corporation. *See* Knepper & Bailey, *Liability of Corporate Officers & Directors*, § 4–12 at 154 (5th ed. 1993). As the Supreme Court of Maine has recognized, these different formulations rest on the single notion that a "corporate fiduciary should not serve both corporate and personal interests at the same time." *Northeast Harbor Golf Club, Inc. v. Harris*, 661 A.2d 1146, 1150 (Me.1995). The facts here show that plaintiff corporation was engaged in the operation of a retail liquor store in Cumberland, Rhode Island, and that by vote of the shareholders, Custodio, the corporation's president, was authorized to attempt to negotiate the purchase of Mendon Liquors, a nearby retail liquor store. Clearly Mendon Liquors was a business in the same line of business as plaintiff, and plaintiff had a corporate interest in acquiring that business. However, whether the opportunity for plaintiff ever to accomplish its purchase of Mendon Liquors did actually exist was not considered by the trial justice when passing upon defendants' motion for directed verdict.

4. We note that "[t]he term 'close corporation' has been defined in various ways," 1 *O'Neal's Close Corporations*, § 1.02 at 4 (3d ed. 1992), but "that no satisfactory all-purpose definition of a close corporation appears ever to have been worked out." *Id.* at 7 n. 1 (quoting Carlos D. Israels, *The Close Corporation and the Law*, 33 Cornell L.Q. 488, 491 (1948)).

In this case the facts demonstrate that defendant Antonio never acquired any interest in Act, Inc., or Mendon Liquors. Although we have determined that he was a corporate fiduciary of plaintiff and that Mendon Liquors represented a potential corporate opportunity, the fact that he acquired no interest whatever in Mendon Liquors belies the trial court's judgment that he deprived plaintiff of a corporate opportunity. In this case Antonio did not divert any corporate opportunity in Mendon Liquors to himself and thus could not in law have been found to have breached his fiduciary duty to plaintiff. The denial of his motion for a directed verdict was therefore error.

With respect to Armenio, however, the trial evidence reveals that he did acquire a financial interest in Act, Inc. The trial evidence, however, lacked the probative proof recognized as required by the trial justice in her later instruction to the jury that Mendon Liquors was a corporate opportunity that was in fact realistically available to plaintiff corporation or that the corporation was financially able to purchase Mendon Liquors. We conclude from the facts reported in the trial record before us that Armenio, although owing a fiduciary duty to his fellow shareholders in plaintiff corporation, did not breach that duty because plaintiff corporation was financially unable to avail itself of the opportunity of purchasing Mendon Liquors. Armenio then, as anyone, was able to participate in its acquisition by Act, Inc., without accountability to plaintiff corporation. *See Northwestern Terra Cotta Corp. v. Wilson*, 74 Ill.App.2d 38, 219 N.E.2d 860, 864 (1966) ("an opportunity may be embraced * * * without accountability to the corporation if the corporation sought without success to obtain it"); *Robinson v. Brier*, 412 Pa. 255, 194 A.2d 204, 206 (1963) ("where the corporation is *unable* to avail itself of the business opportunity, there can be no usurpation of a corporate opportunity").

## III

### Conclusion

We today recognize that a fiduciary obligation, similar to that imposed upon partners in a partnership, does exist among the shareholders in a small family type of or close corporation. We note for purposes of guidance in possibly avoiding controversy or litigation of the nature concerned in this appeal, that when a shareholder in such a corporation becomes aware of what could be considered a corporate opportunity advantageous to the corporation, he or she should first analyze the nature of the opportunity to determine if it is one that rightfully belongs to the corporation. If the shareholder reasonably believes that the opportunity is one in which the corporation has no interest or does not have either any expectancy in obtaining or the financial ability to obtain, then the shareholder may take it for himself or herself without breaching any fiduciary obligation. A shareholder, by first presenting the opportunity to the other shareholders by means of a corporate meeting, however, would certainly create a kind of "safe harbor" and remove the probability of a later judicial finding that the shareholder had improperly usurped a corporate opportunity. The shareholder's up-front presentation of the available corporate opportunity to the corporation and its other shareholders, we believe, would certainly lessen the possibility of later litigation questioning the shareholder's breach of his or her fiduciary duty if the shareholder later acquires the particular subject matter. *See generally Broz v. Cellular Information Systems, Inc.*, 673 A.2d 148, 157–58 (Del.1996) (involving directors and officers).

On the record before us we conclude that the plaintiff in this case has failed to prove that the opportunity was reasonably available to it to purchase Mendon Liquors. Accordingly in such a case there was no breach of any fiduciary duty by Armenio. His motion for a directed verdict should have been granted and was erroneously denied.

For the foregoing reasons the appeal of Antonio and Armenio Teixeira is sustained, and the judgment appealed from is reversed.

GOLDBERG, J., did not participate.

FLANDERS, Justice, concurring in part and dissenting in part.

I respectfully dissent from the majority's conclusion that the trial justice erred by

failing to direct a verdict in favor of defendant Armenio Teixeira (Armenio) on the claim filed against him by the plaintiff A. Teixeira & Co., Inc. (the corporation) for usurpation of a corporate opportunity. Although I agree with the majority's determination that Armenio owed a fiduciary duty to the corporation and to its other shareholders, I disagree with its holding that there was insufficient evidence of a genuine corporate opportunity to buy Mendon Liquors (Mendon), a competing business. I also disagree with the majority's conclusion that Armenio did not violate his fiduciary obligations to the corporation (and to his fellow shareholders) when he bought an interest in Mendon for himself without having first given the corporation the opportunity to do so and without having first made full disclosure to his fellow shareholders of the proposed terms of the purchase.

I do not believe that a self-dealing fiduciary like Armenio should be able to consummate such a transaction for his own account merely because in his estimation "the opportunity is one that the corporation has no interest in or does not have any expectancy in obtaining or have the financial ability to obtain." Rather, I believe that after authorizing the corporation's president, Honorato Custodio (Custodio), to communicate with Mendon and to negotiate for the purchase of this competing business, neither Armenio nor any of the other shareholders should have been free to buy this competing business for themselves without having first given the corporation the opportunity to do so. Furthermore, I conclude that there was sufficient evidence presented for a jury to conclude that Armenio violated his fiduciary duties to the corporation and to his fellow shareholders by participating in such a personal purchase of a competing business while he was still a shareholder of this close corporation and while he was still participating not only in its management but also in its decision to pursue the very opportunity he secretly took for himself.

I concur with the majority's conclusion that in the circumstances of this case Armenio owed a fiduciary duty to the corporation in his capacity as a minority shareholder participating in the management of this close corporation.[5] Initially, whether a fiduciary duty exists "is a question of law for the court." *E.g., A. Teixeira & Co. v. Teixeira,* 674 A.2d 407, 408 (R.I.1996). This court has previously recognized "the unique set of circumstances presented by closely held corporations," *Fournier v. Fournier,* 479 A.2d 708, 712 (R.I.1984); *see also* G.L.1956 § 7–1.1–51 (providing special provisions relating to close corporations), and acknowledged that "shareholders in a closely held family corporation may well have * * * a fiduciary duty to deal fairly with one another," *Estate of Meller v. Adolf Meller Co.,* 554 A.2d 648, 651 (R.I. 1989); *see also Bader v. Alpine Ski Shop, Inc.,* 505 A.2d 1162, 1167 (R.I.1986) ("a fiduciary relationship exists between a corporation and its stockholders"); *Demoulas v. Demoulas Super Markets, Inc.,* 424 Mass. 501, 677 N.E.2d 159, 179 (1997) ("[i]n the case of a close corporation, which resembles a partnership, duties of loyalty extend to shareholders, who owe one another substantially the same duty of utmost good faith and loyalty in the operation of the enterprise that partners owe to one another, a duty that is even stricter than that required of directors and shareholders in corporations generally") (citing *Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 328 N.E.2d 505 (1975)). *See generally* Harry G. Henn & John R. Alexander, *Laws of Corporations* § 268 at 735 (3d ed. 1983) ("[r]elationships among shareholders of closely-held corporations have been held to a higher fiduciary standard than is recognized in other corporations"); 3 William Meade Fletcher et al, *Fletcher Cyclopedia of the Law of Private Corporations* § 844.20 at 219 (1994 rev. ed.) ("close corporation shareholders, as such, stand in fiduciary relationship to each other"); F. Hodge O'Neal & Robert B. Thompson, 2 *O'Neal's Close Corporations* § 8.08 at

---

5. Because all the governance arrangements for this corporation were otherwise valid, its technical noncompliance with G.L.1956 § 7–1.1–51 does not affect the analysis of the shareholders' fiduciary duties to one another.

75 (3d ed. 1992) ("[w]here several owners carry on an enterprise together (as they usually do in a close corporation), their relationship should be considered a fiduciary one similar to the relationship among partners[;][t]he fact that an enterprise is incorporated should not substantially change the relationship"). Moreover, because "it [is] implicit that people who enter into a small business enterprise * * * place their trust and confidence in each other," *Hagshenas v. Gaylord,* 199 Ill.App.3d 60, 145 Ill.Dec. 546, 554, 557 N.E.2d 316, 324 (1990), there is further support for finding a fiduciary duty because it "exists in all cases in which a confidential relationship has been acquired." *Id.*[6]

Unlike his cousin, Caesar Teixeira (Caesar), who was not a shareholder of the corporation and therefore "owed no duty either to the corporation or to the majority shareholders to refrain from participation in the purchase of Mendon Liquors," *A. Teixeira & Co.,* 674 A.2d at 408, Armenio was a shareholder in the corporation, which, as was found by the trial justice, "originat[ed] out of a friendly business venture, [and was] operated informally and with at least some participation from all of the shareholders in corporate management and decision-making from the date of incorporation until * * * September, 1983," the date after which the corporation conducted its business "in a polarized and more formal manner." Apparently, prior to Armenio's usurpation of the corporation's opportunity to purchase Mendon, there was ongoing and sometimes even daily communication among the shareholders of the corporation, which was operated in a manner similar to that of a partnership. Moreover, Armenio actively participated with the other shareholders in organizing the corporation, in its ultimate purchase of Pop's Liquors, and in the decision to pursue the Mendon acquisition. Thus in these circumstances it is entirely appropriate to conclude that Armenio owed fiduciary duties to the corporation and to his fellow shareholders. *See* 2 *O'Neal's Close Corporations* § 8.08 at 75 ("[i]n view of the informal way in which the affairs of most close corporations are conducted, there is usually no necessity for distinguishing between the fiduciary duties of the controlling participants in their various capacities as shareholders, directors, and officers").

However, after concluding that Armenio owed a fiduciary duty to the corporation, the majority then faults the trial justice for failing to direct a verdict in his favor on the corporation's claim that he breached his fiduciary duties by usurping the corporation's opportunity to buy Mendon.

Given the highly deferential standard of review on a motion for a directed verdict,[7] I respectfully dissent from this aspect of the majority's opinion.

## I

### Existence of a Corporate Opportunity

I believe that the trial justice properly denied Armenio's motion for a directed ver-

---

**6.** Although a subsequent decision of an Illinois court of coordinate appellate authority factually distinguished *Hagshenas,* it did so on the basis that the defendant shareholder in the later case was "a mere shareholder" with no "ability to hinder, influence, or control the corporation." *Dowell v. Bitner,* 273 Ill.App.3d 681, 210 Ill.Dec. 396, 403, 652 N.E.2d 1372, 1379 (1995) ("something more than the mere status as a shareholder in a close corporation is required to impose a fiduciary duty"). Here, in stark contrast, Armenio was much more than "a mere shareholder" (as the majority aptly notes, the shareholders in the corporation actively participated in management decisions) and thus he was properly found to have owed the corporation and its shareholders a fiduciary duty.

**7.** "The standard of review on a motion for a directed verdict is well settled: the trial justice, and this Court on review, considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for a directed verdict must be denied, and the issues must be submitted to the jury for determination." *DeChristofaro v. Machala,* 685 A.2d 258, 262 (R.I. 1996).

dict because, after reviewing the plaintiff's evidence in a light most favorable to the plaintiff, the trial justice properly concluded that factual issues remained concerning the existence of a corporate opportunity upon which a reasonable jury could draw different conclusions.

A reprise of the pertinent facts shows why this is so. The plaintiff incorporated on September 15, 1981, and acquired a liquor license to operate the previously purchased Pop's Liquors in January 1982. Later that year, in December 1982, the president of the corporation, Custodio, learned that Mendon, the corporation's closest competitor, was for sale. Accordingly he notified Armenio and the other shareholders of this fact during an informal meeting at which they discussed Mendon's availability. Although his authority to pursue this opportunity had not been formally voted upon and duly encapsulated in the minutes of the shareholders' meeting, the evidence was undisputed that Custodio had been authorized by the corporation's other shareholders to negotiate for the corporation's purchase of Mendon in accordance with the informal means by which this close corporation (like so many others of its small size) handled its business affairs.

Over the course of the four or five months (December 1982 through March 1983) during which he made five or six telephone calls and had a meeting with one of the owners of Mendon, Custodio kept the other shareholders advised of the status of his inquiries and of Mendon's responses. In his communications with Mendon, Custodio discussed the possibility of the corporation's purchasing it. Moreover, one of the owners of Mendon met with Custodio personally to talk over this potential purchase, and Custodio expected one of Mendon's principals to get back to him with a price and suggested terms. (Custodio testified that he recalled a figure of $122,000 as an offer he might have thrown at them.) Although Custodio was never granted the opportunity to review Mendon's inventory, make a deposit, sign a buy/sell agreement, or examine Mendon's receipts, accounts receivables, gross sales, financial statements, or tax returns, his inability to do so, in retrospect, is hardly surprising, given Caesar's initiation of and involvement in competing negotiations for his own personal account during the same period that Custodio was trying to establish a negotiating beachhead with Mendon on behalf of the corporation.

Caesar testified that he first learned of the potential sale of Mendon via a newspaper advertisement in January 1983—one month *after* Custodio began talking to Mendon's owners at the behest of Armenio and the other shareholders. Caesar stated that after he learned about Mendon's being for sale, he immediately contacted Mendon's owners and began to negotiate to buy the business. These discussions culminated in June 1983 when Act, Inc., then newly incorporated (with Caesar, Armenio, and another person holding equal shares), gave Mendon a firm agreement to purchase. Although the closing did not occur until August 1983, some months after the corporation's last contact with Mendon, it is clear that there was a substantial period (at least from January 1983 through March 1983) during which both the corporation and Caesar, on behalf of what eventually became Act, Inc., were jointly wooing Mendon. Thus Custodio's inability to obtain from Mendon the information he needed to pursue the proposed acquisition might well have been the result of the similar interest expressed by Caesar whose spadework soon resulted in Armenio's participation in the purchase of this business.

Moreover, at no time after he authorized Custodio to communicate with Mendon so that the corporation could explore a possible acquisition did Armenio or any of the other shareholders raise any question concerning the corporation's financial ability to purchase Mendon. Indeed, it would have been a most curious circumstance if Armenio and his fellow shareholders had authorized Custodio to negotiate the acquisition on behalf of the corporation if they also believed the corporation would have been unable to buy this competitor in any event. Although the corporation had lost money during its first year of operation and owed its shareholders some

money, Custodio testified that the corporation had several financing alternatives to accomplish the proposed Mendon purchase and the owners of Mendon were willing to consider financing such an acquisition themselves. Moreover, in a close corporation environment, it is not just the corporation's assets and credit but those of its shareholders as well that are potentially available to be tapped in the event of a potential acquisition. Thus it ill lies in Armenio's mouth, after authorizing Custodio to try to buy this company for the corporation, to claim that the corporation would nevertheless have been unable to do so and that therefore he was free to participate in usurping this corporate opportunity for himself.

On the contrary, having authorized the corporation's president to pursue a corporate opportunity, Armenio did not have the right to determine unilaterally whether the corporation had the ability to purchase Mendon. Rather, "a fiduciary who is interested in pursuing an opportunity should not make the decision as to whether the venture is also of interest to the corporation. Instead, to ensure fairness to the corporation, opportunities must be presented to the corporation without regard to possible impediments, and material facts must be fully disclosed, so that the corporation may consider whether and how to address these obstacles. * * * Without such a rule, the fiduciary's self-interest may cloud his judgment or tempt him to overlook his duties." *Demoulas,* 677 N.E.2d at 181; *see also id.* at 179 ("[i]n the case of a close corporation, which resembles a partnership, duties of loyalty extend to shareholders [that are] * * * even stricter than [those] required of directors and shareholders in corporations generally"). As we recently stated in *Long v. Atlantic PBS, Inc.,* 681 A.2d 249, 256 n. 8 (R.I.1996), the fiduciary duty owed to a shareholder in a close corporation "is one of the most rigorous that the law imposes * * * 'Not honesty alone, but the punctilio of an honor the most sensitive, is * * * the standard of behavior.'" (quoting *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 546 (1928) (Cardozo, C.J.)).

Here it was up to the corporation and its shareholders—and not to Armenio acting alone or in concert with Caesar or with any other third-party investors—to determine whether any obstacles faced by the corporation in its pursuit of a possible Mendon acquisition were insurmountable. *See Demoulas,* 677 N.E.2d at 183 ("the existence of a legal or other impediment is a matter for a corporation's board to consider when deciding whether to accept or decline an opportunity that has been disclosed to it, and the existence of any impediment does not excuse the failure of a fiduciary to present the opportunity to the board and to disclose all material details before pursuing it himself"). Otherwise, shareholders in a close corporation would have carte blanche to take secret steps on their own to capture the opportunity for themselves and then, after the fact, to pooh-pooh the corporation's chances of ever having been able to close on this prospective business opportunity, thereby effectively ensuring that the corporation will be unable to consummate such a transaction. Under this formulation of the law, a close corporation's failure to accomplish any prospective acquisition would tend to be a self-fulfilling prophecy: any shareholders (like Armenio) who might be looking to advance their own personal interests at the expense of the corporation would have a clear field to try and cut their own deals on the sly, thereby frustrating the corporation's prospects for doing so. And if successful, these self-dealing fiduciaries could then turn around and claim that they were at liberty to do so all along because, after all, they reasonably believed the corporation would have been unable to complete such a purchase in any event.

Accordingly, after considering this evidence in the light most favorable to plaintiff corporation, without weighing the evidence or evaluating the credibility of the witnesses, and after drawing all reasonable inferences that support the corporation's position, I believe that factual issues remained upon which reasonable persons might draw different conclusions regarding whether a corporate opportunity existed and whether plaintiff corpo-

ration had the ability to take advantage of that opportunity. Thus in my opinion Armenio's motion for a directed verdict was properly denied.

## II

### Armenio's Actions to Deprive the Corporation of Its Opportunity to Purchase Mendon

Armenio also claimed that Caesar acted independently to initiate the purchase of Mendon and that the corporation had abandoned its efforts in that regard. For the same reasons detailed above, I believe that the trial justice and the jury were entitled to conclude that the corporation's efforts to pursue the *Mendon* opportunity were secretly usurped and interfered with by Armenio and his fellow buying group of investors. Furthermore, the mere fact that *Caesar* may have acted independently to initiate the purchase of Mendon should not shield *Armenio* from liability when, despite his being fully aware of the corporation's expressed and demonstrated interest in Mendon, he decided to buy a piece of this competing business for himself without first offering it to the corporation or ascertaining whether its interest had ended.

## III

### Conclusion

For these reasons I would affirm the judgment against Armenio except that I would vacate the award of punitive damages against him because of a lack of " 'evidence of such willfulness, recklessness or wickedness, on [his] part * * *, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished.' " *Palmisano v. Toth,* 624 A.2d 314, 318 (R.I.1993). In addition, the judgment should be modified to give the corporation the option to purchase Armenio's shares in Act, Inc. for the price he paid for them. With respect to the other defendants, I join in the majority's opinion.