DECISION
This matter is before the Court following a non-jury trial for decision on John L. Sweeney ("Sweeney") and Theodore A. Platz's, III ("Platz") (collectively "Plaintiffs") complaint against Christine R. Reed ("Reed" or "Defendant"). The Plaintiffs claim that Reed, one of the "maker(s)" of a promissory note, breached her agreement to repay her one-third share of a bank loan for proceeds received by Gertrude's Galley, LLC ("Gertrude's Galley") as working capital in the amount of $22,376.39.
Also before the Court for decision is Reed's Counterclaim, which alleges that she was: (1) discharged from her day-to-day responsibilities at Gertrude's Galley without notice; (2) unable to obtain information about the operation of Gertrude's Galley until she obtained counsel; (3) denied the right to participate in the decision to close Gertrude's Galley; (4) denied the right to participate in any of the ongoing business decisions; (5) and that certain payments made by Gertrude's Galley benefited Plaintiffs — Defendants in Counterclaim — and were not proper expenses of Gertrude's Galley. Reed claims any one of these actions, alone or in concert with each other, constituted a Breach of Fiduciary Duty and a Breach of Duty of Loyalty. Reed requested that this Court, amongst other relief to be granted, create a constructive trust against the remaining assets of Gertrude's Galley. *Page 2 
For the reasons that follow, Plaintiffs are entitled to monetary damages. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I FACTS TRAVEL
Reed admitted to the following facts in her answer: that she executed the "endorsement/guaranty" portion of the promissory note; that she received the demand from the bank for repayment; that she did not make any payments towards the loan; and that she is aware payment was made to the bank. Reed also raised six "Affirmative Defenses" in her answer. However, at trial she proceeded on only two, Breach of Fiduciary Duty and Breach of Duty of Loyalty.
Additionally, Reed brought a "Counterclaim" against Sweeney and Platz, in which she alleged that Sweeney and Platz breached their fiduciary duties arising out of the LLC agreement. Reed alleged that Plaintiffs admitted to owing a fiduciary duty to the other members of the LLC. This duty included: insuring that the business would be run in a commercially reasonable manner; would produce a profit enabling the members to receive a distribution for their respective investments; and also a duty of loyalty to each other.
However, in their answer to Reed's Counterclaim, Sweeney and Platz denied the following: that Reed handled all the day-to-day operations in managing the restaurant; that they, without notice or compliance with the operating agreement, either discharged or stripped Reed of her involvement with Gertrude's Galley; that after November 2004, Reed had no involvement with the business or was denied information about the business until Reed obtained legal counsel; that following cessation of the business, assets laid dormant for an extended period in *Page 3 
2005 without proper disposition; and that they breached their fiduciary duty and their duty of loyalty to Reed.
At trial only Platz and Reed testified. The following is a recitation of the facts contained in the record and adduced at trial. The story of Gertrude's Galley began, as both Platz and Reed agree, when Reed approached Platz to discuss the possibility of jointly operating a restaurant. Reed and Platz had not known each other for very long. According to Reed, at the time, Platz was engaged in other business ventures, including the ownership and/or operation of a fishing boat. Reed testified that she spoke with Platz about having him supply the fish for the restaurant.
Initially Reed did not know Sweeney. Following the initial discussion, Platz spoke with his friend and business partner Sweeney about Reed's idea. Platz and Sweeney already owned the real property where the restaurant was eventually located.
During these initial discussions, according to Platz, Reed explained that she had prior experience in running restaurants, including hiring staff. Platz testified that he and Sweeney relied on Reed's representations of her prior restaurant management experience. Platz and Sweeney estimated that it would cost approximately $60,000 for construction and all required municipal permitting to get the restaurant up and running. Sweeney and Platz agreed to contribute $20,000 each and that Reed's $20,000 contribution would come in the form of "sweat equity."
Reed testified that rather than operating a "clam shack,"[1] as originally proposed by Platz, the parties agreed to operate a full scale restaurant serving food and alcoholic beverages. Reed further testified that she embarked on researching the zoning regulations, permits, and liquor license that would be necessary to procure before opening such a restaurant. According to Reed's testimony, all of this occurred before entering into a written agreement. *Page 4 
Reed testified that some time after she completed her research, Sweeney suggested that he, Platz, and Reed should form a limited liability company. Reed testified that before entering into the agreement she was led to believe that Sweeney was a partner in another restaurant and thus, had experience in the restaurant business. Reed further testified that she was comforted by statements such as "don't worry we'll take care of you" made to her by Platz and Sweeney.
It is undisputed that Christine Reed, John L. Sweeney, and Theodore A. Platz, III, all entered into a written Operating Agreement ("Agreement") dated February 1, 2002, forming a Rhode Island Limited Liability Company known as Gertrude's Galley, LLC. The stated purpose of Gertrude's Galley was to engage in the operation of a restaurant and any other related business or activity in Middletown, Rhode Island.
The Agreement delineated by whom and upon what terms the LLC would be operated. Under the section entitled "Management," the Agreement provided that Gertrude's Galley, LLC "shall be managed by one (1) Manager . . . who shall be responsible for the management of the LLC's business and affairs." The Agreement expressly provided the "original Manager shall be John L. Sweeney." Additionally, under the "Management" section the Manager, subject to the approval of the other members, had the general powers to "(c) Call a meeting, annual or special, of the Members at any time upon notification; (d) Enter into, make, and perform contracts and agreements which bind the LLC that are necessary and appropriate in the ordinary course of business at the LLC. . . ." *Page 5 
The Manager's general powers were expressly limited in certain aspects. The Manager could not without
 the unanimous consent of the Members . . . (a) Enter into any agreement, contract or commitment on behalf of the LLC which would obligate any Member to fund additional capital, to guarantee a loan or to increase a Member's personal liability either to the LLC or to a third party.
The Agreement further provided that Sweeney was responsible for the financial reporting for the LLC. Despite this requirement, according to Reed's testimony, Sweeney never fulfilled these responsibilities. Instead those responsibilities fell upon Reed and later upon a paid employee of Gertrude's Galley.
At the onset of Gertrude's Galley, all of the members understood that it would take some time to remodel the property. According to Platz, all the members originally anticipated that the restaurant would open in the spring of 2002. Platz acknowledged that once the restaurant opened, Reed would operate the restaurant, hire staff, and order supplies with Sweeney and Platz being "silent partners." Further, it was understood by all three members that only after the restaurant opened would the obligation to pay monthly rent of $1600 to the landlords — Platz and Sweeney — commence.
The restaurant did not open until March of 2003. Reed testified that most of the delays were caused by contractors and sub-contractors, some of whom were engaged by Platz or Sweeney without her knowledge or consent as a member of the LLC. The delays caused the project to be over budget, as such, it became necessary for the members to contribute additional capital. It is undisputed that the need for additional capital was discussed with Reed. Platz testified that in January of 2004, all the members, including Reed, discussed borrowing money in order to clean up the accounts payable by the LLC. Thus, on January 6, 2004, Gertrude's Galley, *Page 6 
LLC, entered into a "promissory note" — signed by all three members — for a sum of $75,000 with Bank of Newport.
Notably, the lack of capital was not the only problem for Gertrude's Galley. Platz testified that sometime in February 2004, after executing the promissory note without his or Sweeney's knowledge or consent, the restaurant abruptly closed for a period of time. Platz testified approximately five weeks later the restaurant reopened with Reed remaining as manager until July of that year.
The witnesses disputed what happened next. According to Platz, again without anyone's prior knowledge or agreement, Reed unilaterally handed over more management responsibilities to the paid chef, Trish Herman. Herman was not a member of Gertrude's Galley, LLC, but rather an employee of the restaurant. According to Platz, he and Sweeney treated this independent decision by Reed as "effectively remov[ing] herself as operational manager of the LLC."
Reed, on the other hand, testified that before July 2004, she was running the business "well" until Platz returned to the area from a vacation. Platz, being more "business oriented" than she, wanted to reduce the number of employees, believing she was spending too much money on payroll. Reed testified that she was concerned that Platz would close the business, and so she agreed to turn over her management responsibilities to Trish Herman. According to Reed, because the working relationship between the members began to deteriorate, she gave up her responsibilities in the hope that the remaining members could salvage the business.
In July of 2004, Platz and Reed mutually agreed to some changes at Gertrude's Galley; all new operational management decisions would be made through Platz. They further agreed that until the business stabilized, Trish Herman would formally take over Reed's operational *Page 7 
management responsibilities, while Reed would continue to work as a salaried employee at the restaurant as a hostess and bartender, which she did until October of 2004.
Reed testified that between July and October of 2004, Platz would not allow any meetings between the members of the LLC and the staff. She was told not to do anything that would undermine Platz's authority and that she was not allowed to function as a member of the LLC.
Platz testified that the restaurant continued to operate with Trish Herman as manager until December 2004, when all the members agreed to close until the spring. According to Platz, while Herman ran the restaurant it was generally profitable in contrast to when Reed did so.
Platz testified that during the periods when Reed managed the business, all three members were asked to make additional cash contributions. However, in December of 2004, only Platz and Sweeney made cash contributions, while Reed did not. Platz testified that they were unable to reopen the restaurant in the spring of 2005, because Trish Herman could not return as manager.
In February 2005, the parties acknowledged that a letter was sent to Sweeney, as manager of Gertrude's Galley, LLC on behalf of Reed by her attorney. (Def.'s D.) The letter stated in part:
 She [Reed] has been excluded from any financial and accounting information about the Company in which she holds a one-third membership interest. What is especially disconcerting is that Ms. Reed indicates she is personally liable for many obligations of the Company, yet has no knowledge of operations at this time and no input in the decision-making process. Finally, Ms. Reed has now received a notice that each member must contribute additional capital to the Company, and no one has explained to her the reason for this latest contribution other than to keep debt current until reopening. I would point out that the Operating Agreement clearly states that no member is required to make any further capital contribution, and Ms. Reed does not intend to do so at this time. *Page 8 
The letter further requested a meeting of the members during the week of February 28th "to bring Ms. Reed up to date on operations and finances and to explore the expanded role of Ms. Reed prospectively, or in the alternative, to entertain a proposal to purchase Ms. Reed's interest in the company." Platz testified that although he and Sweeney attempted to reach Reed, no such meeting ever took place.
Platz testified that after Herman was unable to return, he and Sweeney first looked for someone else to run the business. Then they engaged a real estate agent in an unsuccessful attempt to rent out the premises. Not being able to reach Reed, Plaintiffs could not continue to run the business themselves. Thus, Platz and Sweeney sold the restaurant equipment to others.
According to Platz, when he and Sweeney decided not to reopen the restaurant, approximately $25,000 was left unpaid to vendors, another $25,000 was owed for back rent, and Sweeney made an additional cash contribution to the business of $9,000.
Although the terms of the promissory note did not require full payment until July 2009, the promissory note was "paid" on August 22, 2005 because of a default, "the operation (the restaurant) for which the loan was advanced ha[d] ceased operations." The Bank made demand on the note for $66,490.80. Platz and Sweeney purchased the promissory note from Bank of Newport. According to Platz, he and Sweeney paid the full amount themselves, receiving no contribution from Reed.
The Partnership tax return for Gertrude's Galley, prepared by its accountant, showed gross sales of $476,503, cost of goods sold $192,112 with gross profit of $284,391. (Def.'s H.) However, after deductions for wages other than to partners, ($155,267), rent ($21,600), depreciation ($43,895), and other routine business deductions totaling $101,943, the business suffered a loss of $76,757. *Page 9 
The "checking account register" for Gertrude's Galley, maintained at Newport Federal Bank for the time frame January 1, 2005 through June 30, 2005, shows the business started the year with approximately $21,000. (Def.'s Ex. E, F.) The exhibits for the time frame January 1, 2005 through May 21, 2005 show typical routine payments customarily associated with a restaurant. The exhibits reveal that in April and May of 2005, Sweeney purchased some equipment from the business for a total of $250. However, the exhibits also show substantial cash deposits from both Sweeney and Platz during that same time.[2]
 II STANDARD OF REVIEW
Rule 52 of the Rhode Island Superior Court Rules of Civil Procedure governs non-jury trials, and provides that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." Super. R. Civ. P. 52(a). Accordingly, "the trial justice sits as the trier of fact as well as of law." Hood v.Hawkins, 478 A.2d 181, 184 (R.I. 1984). A trial justice's finding of fact will not be disturbed "unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." Opella v. Opella, 896 A.2d 714,718 (R.I. 2006) (quoting Bogosian v. Bederman, 823 A.2d 1117,1120 (R.I. 2003)). Furthermore, although the trial justice is required to make specific findings of fact, "brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." Donnellyv. Cowsill, 716 A.2d 742, 747 (R.I. 1998). *Page 10 
 III ANALYSIS
In her Post-Trial Memorandum, Defendant argued that for her to successfully defend Plaintiffs' claim and establish her counterclaim, this Court must conclude that Sweeney and Platz violated their respective fiduciary duty of good faith and fair dealing relative to Reed and to Gertrude's Galley, LLC. If the Court does not agree with Defendant's contentions then admittedly she is liable to Plaintiffs.
The Rhode Island Limited Liability Company Act, ("Act") governs generally the rights and obligations of members of a limited liability company to each other. G.L. 1956 (1999 Reenactment) § 7-16-1 et. seq. Defendant urges this Court to treat the members of Gertrude's Galley, LLC "like a partnership with a fiduciary duty towards one another." Defendant relies principally onA. Teixeira Company Inc. v. Teixeira, 699 A.2d 1383 (R.I. 1997).
In Teixeira, the plaintiff's principal claim was that the purchase of a competing business, by one member of a six member corporation, deprived the business of a corporate opportunity that belonged to all of the original shareholders. Id. at 1386. The corporation in Teixeira "was not a model of clarity;" it lacked a board of directors but was not established as a "closed corporation" as would be expected for such a small organization.Id. at 1384; § 7-1.1-51. Our Supreme Court, after discussing the rights of minority corporate shareholders, observed: "We are of the opinion that the term `fiduciary' is a broad concept that might correctly be described as `anyone in whom another rightfully reposes trust and confidence.'" Id. at 1387 (quoting Francis X. Conway, The New York Fiduciary Concept in IncorporatedPartnerships and Joint Ventures, 30 Fordham L. Rev. 297, 312 (1961)). Our Supreme Court went on to hold:
 Today we conclude on the basis of the small number of shareholders in plaintiff corporation, the active participation by *Page 11 
these shareholders in management decisions, and their close and intimate working relations, that the shareholders of plaintiff corporation, by acting as if they were partners, thus assumed a fiduciary duty toward one another and their corporation." Id. at 1387 (emphasis added).
Section 7-16-14, "Management by members," states that "unless either the articles of organization or a written operating agreement provide for management by or under the authority of one or more managers . . . the business and affairs of the limited liability company shall be managed by the members." Further, in the absence of a designated manager, each member has the power and authority subject to all duties and liabilities of managers. Section 7-16-14(2). In their Operating Agreement the members of Gertrude's Galley, LLC, pursuant to § 7-16-15, designated only one person — John Sweeney — to serve as its manager. (Def.'s Ex. A.)
Generally, under the Act, members of a member-managed LLC owe each other the same fiduciary duties that managers owe to the LCC and its members. Section 7-16-17. Section 7-16-17(a), entitled "Duties of Managers," provides: "A manager shall discharge his or her managerial duties in good faith, with the care that an ordinarily prudent person in a similar position would use under the circumstances, and in the manner the manager reasonably believes to be in the best interests of the limited liability company." This sentence encompasses the "duty of care." This is followed by three additional provisions which expand upon the standard of the reasonably prudent manager: the manager's right to rely in good faith on the information produced by experts, § 7-16-17(b); the requirement that the manager exercise informed business judgment, § 7-16-17(c); and the protection of the Business Judgment Rule, § 7-16-17(d). Finally, § 7-16-17(e) imposes the Duty of Loyalty, which includes the duty to avoid conflicts of interest.
Section 7-16-17 is not modeled after Delaware's LLC Act, but rather it "parallel[s] former language used in the MBCA [Model Business Corporation Act]." Elizabeth S. Miller and *Page 12 
Thomas E. Rutledge, The Duty of Finest Loyalty and ReasonableDecisions: The Business Judgment Rule in Unincorporated BusinessOrganizations? 30 Del. J. Corp. L. 343, 366-367, n. 95, n. 96 (2005). Thus, as the law of Delaware is not instructive here, the Court is limited to the law in Rhode Island.
At present, no decision from the Rhode Island Supreme Court has applied the duties enumerated in § 7-16-17 with respect to what duty, if any, is owed by a manager of a limited liability company to the members of the LLC. In Marsh v. Billington Farms, LLC, a superior court justice denied cross motions for summary judgment on the breach of fiduciary duty claim. No. 2004-3123, 2006 WL 2555911, *11 (R.I. Super). Relying on Teixeira and distinguishing Delaware law, the trial justice found that members of the limited liability company owed each other and the company itself a fiduciary duty "of utmost care, loyalty and good faith." Marsh,2006 WL 2555911, *4-5 (citing Teixeira, 699 A.2d at 1387; seeBroccoli v. Broccoli, 710 A.2d 669, 673 (R.I. 1998) (shareholders in a closely held corporation may owe to each other a duty of utmost care and loyalty — a duty similar to that pledged by partners in a partnership); compare Metro Commc'n. Corp. BVI v. AdvancedMobilecomm Techs. Inc., 854 A2.d 121, 155 (Del. Ch. 2004) (holding managers of an LLC to the same fiduciary duty as a director of a corporation)).[3] Further, "[i]n a partnership, the partners owe a fiduciary duty not only to the partnership, but to the partners themselves. This duty is more exacting and burdensome than the duty owed by the directors of a corporation; it is a duty of the utmost care and loyalty." Marsh, 2006 WL 2555911, *4 (citingTomaino v. Concord Oil, 709 A.2d 1016, 1021 (R.I. 1998) (internal citations omitted). *Page 13 
Generally, `utmost' care is defined as "great care . . . the degree of care exercised in a given situation by someone in the business or profession of dealing with the situation." Black'sLaw Dictionary 225 (8th ed. 2004). A close reading of the relevant statutes regarding fiduciary duties in Corporations, Partnerships, and LLC's reveals that none of the statutes use the word `utmost.' See G.L. 1956 §§ 7-1.2-801, 7-12-32, 7-16-17. Similarly, a review of the relevant case law reveals that theMarsh definition is not directly supported by either a Rhode Island Supreme Court case or any Rhode Island General Law.
In Tomaino, the Rhode Island Supreme Court considered the fiduciary duties owed in and amongst the shareholders of a Massachusetts closely held corporation. 709 A.2d at 1020. Both Massachusetts and Rhode Island interpret the fiduciary duties of "[s]hareholders in a closely held corporation, who often also act as that corporation's directors and officers, . . . [to be] the same fiduciary duties as partners owe to one another." Id. at 1021 (citing Zimmerman v. Bogoff, 524 N.E.2d 849, 853 (1988);Wilkes v. Springside Nursing Home, Inc., 353 N.E.2d 657, 661
(1976) (quoting Donahue v. Rodd Electrotype Co. of New England,Inc., 328 N.E.2d 505, 515 (1975), explaining that duty to be one of "`utmost good faith and loyalty.'")); see also Texiera,699 A.2d at 1387 (recognizing that "shareholders in a closely held family corporation may have a fiduciary duty toward one another" in a way that is similar to a partnership). It is here, in this long string cite of Massachusetts law that the adjective `utmost' is used to modify the fiduciary duties. As such, this statement is not binding because it interprets Massachusetts law that was not explicitly adopted by the Court.
Our Supreme Court used the word `utmost' again in DiLuglio v.Providence Auto Body, Inc., but only in a footnote, not in the holding. 755 A.2d 757 (R.I. 2000). DiLuglio involved a suit by a minority shareholder who was also an attorney for the same corporation. Id. at 770. *Page 14 
The DiLulgio Court found that an attorney who enters into business deals with his client must adhere to both fiduciary duties and the rules of professional responsibility. Id. Footnote fourteen defines these fiduciary duties as "the duty of utmost good faith and loyalty," again citing only to Tomaino.Id. at 771, n. 14. This definition was not essential to the Court's finding that the attorney should have advised his client and business partner "in writing to obtain independent legal counsel" regarding business transactions and further "should have obtained written consent before consummating these transactions."Id. at 771. This holding was grounded in the rules of professional conduct and not in the fiduciary duties described in footnote fourteen; thus, the heightened standard in footnote fourteen is dicta.
This Court finds that the use of the adjective `utmost' to modify fiduciary duties is not binding Rhode Island law.[4] The Court fully recognizes that another trial justice of this court construed the duty in this manner. Under the troubling set of facts found by the court in Marsh the imposition of such a duty was warranted. However, as there is an absence of statutes and controlling case law which contains the same description, this Court will adhere to the standards as described in the relevant statutes.See § 7-12-32; § 7-16-17.
In deciding whether Reed initially sustained her burden of proof on her claim that Sweeney and Platz violated their respective fiduciary duty of good faith and fair dealing relative to Reed and to Gertrude's Galley, the analysis of the events must be viewed before and after June 2004.
In § 6.8 of their Agreement, the parties agreed, in writing, that Sweeney, as manager, was required to discharge his duties in good faith with the care that an ordinarily prudent person in a similar position would use under the circumstances and in the best interests of the limited *Page 15 
liability company. (Def.'s Ex. A.) The Agreement also gave Sweeney, as "Original Manager" the limited authority to bind the other members of the LLC. Section 7-16-20 provides that "the act of every manager . . . binds the limited liability company unless" the act is contrary to the articles of organization of the LLC or contrary to the terms of the Act. Thus, Gertrude's Galley was bound by any management decision that Sweeney made, with or without the consent of the other members, so long as he did not violate any fiduciary duties. See § 7-16-17.
At trial, the parties agreed that before June 2004, although some issues occurred between them over the start up of Gertrude's Galley, no discrete actions by Sweeney and Platz rose to a level of lacking good faith or loyalty, either directly to Reed or to Gertrude's Galley. Although Reed testified about delays encountered before the restaurant was opened and that she was not consulted about hiring contractors and subcontractors, she did acknowledge that she was informed of the need for additional capital from all the members of the LLC. Therefore, Plaintiffs did not breach their fiduciary duties to Gertrude's Galley or Reed when they did not seek her approval for every business decision.
Similarly, Reed claims that Plaintiffs improved the real estate where Gertrude's Galley was located without her approval. However, Reed ignores the fact that Plaintiffs owned that property themselves; it was not property of the LLC. Thus, it does not necessarily follow that an investment in their own property violated their duty of good faith and duty of loyalty to Reed individually or to Gertrude's Galley.
Whether Reed was correct or not in her subjective belief that in July 2004, Platz and Sweeney would close the business, Reed agreed with Platz for a "change in direction" including Reed's relinquishment of her responsibilities as operational manager. Reed agreed that during this time Trish Herman would take over Reed's former responsibilities as operational manager. *Page 16 
Notably, Reed offered no evidence to support her claim that she was ousted from her position or that her decision was based upon Plaintiffs' alleged bad faith bargaining.
Section 3 of their Agreement, entitled "Membership" provided in subsection 5, "withdrawal" that "No member has the right to withdraw from the LLC as a Member except as provided in this Agreement." (Def.'s A.) "However, a Member has the power to withdraw but such withdrawal shall be deemed a breach of this Agreement. . . ." subsection 5 further provided that "[i]f a Member does exercise such power of withdrawal in breach of this Agreement, the Member shall be liable to the LLC and the other Members for all monetary damages. . . ." Lastly, subsection 5 provided that "[t]he LLC and the other Members shall not have the right to prevent the withdrawing Member from withdrawing through the use of an injunction or otherwise." Clearly, Reed had the right to withdraw from the LLC. No other provision within the Agreement imposed any additional requirements. Although her withdrawal could be considered a breach of the Agreement, the other members were powerless to stop her.
The gravamen of Plaintiffs' complaint does not seek monetary damages for Reed's alleged breach of the Agreement by withdrawal. The claim is based upon Reed's failure to pay her share of the January 2004 promissory note. Reed has not proven any breach of fiduciary duty by Plaintiffs that would be sufficient to discharge her liability on the promissory note. Under the terms of § 3.3 of the Agreement "no member shall be liable for the debts . . . of the LLC to a third party unless the member agrees in writing to be liable." Reed did not dispute that she, along with Platz and Sweeney, agreed in writing to be liable to Bank of Newport for the debt. *Page 17 
 CONCLUSION
After due consideration of the evidence and testimony presented at trial, as well as the arguments advanced by counsel in their memoranda, the Court finds that John L. Sweeney and Theodore A. Platz, III are entitled to judgment of $22,376.39 against Christine R. Reed and their costs on the sole count of their complaint. Prejudgment interest may be added to this judgment.
The Court further finds in favor of John L. Sweeney and Theodore A. Platz, III in Defendant's Christine R. Reed Counterclaim.
Counsel for John L. Sweeney and Theodore A. Platz, III may prepare an appropriate order and judgment in this matter.
[1] "A place to buy or eat clams." http://en.wiktionary.org/wiki
[2] The total cash deposits by Sweeney between January 1, 2005 and June 30, 2005 was $10,000; for Platz during the same time frame was $12,000.
[3] Following a trial on the merits in Marsh, the court issued a second written decision. 2007 WL 2344029 (R.I. Super). In footnote twenty, the court referred to its earlier decision, noting: "that, not only do managers of an LLC have fiduciary duties to the LLC, but that members of this LLC also owed each other a duty of `utmost care, loyalty, and good faith' similar to that owed by shareholders in a close corporation." 2007 WL 2344029, at n. 20 (emphasis added).
[4] The dissent in Texiera cited the same Massachusetts case as Tomaino. 699 A.2d at 1389 (citing Donahue v. RoddElectrotype Co. of New England, Inc., 367 Mass. 578, 592,328 N.E.2d 505, 515 (1975)).