**Benedetto BROCCOLI, Jr.**

v.

**Anthony BROCCOLI et al.**

**No. 97–150–Appeal.**

Supreme Court of Rhode Island.

April 30, 1998.

---

David S. Cass, Frederick G. Cass, Kingstown, for Plaintiff.

Melody A. Alger, Dennis S. Baluch, Providence, for Defendant.

Before LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

**PER CURIAM.**

This case came before a three judge panel of the Supreme Court on March 17, 1998, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. This appeal involves essentially a bitter family feud case in the guise of a corporate shareholders suit. In it one brother disputes a trial justice's decision to establish a receivership in order to dissolve a family business, and another brother disputes the trial justice's finding that he breached his fiduciary duty to a second family owned corporation.

After reviewing the papers submitted by both parties and hearing the oral arguments of counsel, we are of the opinion that such cause has not been shown; therefore, the issues will be decided at this time.

The facts of this case reveal a bitter and long-running battle among three brothers, Biagio, Benedetto and Anthony Broccoli, that in the end destroyed their fraternal bonds and Delaine Auto Body, the family business started by their father in 1955.

In 1987, anticipating that Biagio's son and Benedetto's two sons would soon take over the family business, the brothers Broccoli restructured their holdings so that they could retain the property on which the autoshop was located while Biagio's son and Benedetto's sons ran the business. To that end, the brothers divided Delaine Auto Body's assets between two separate corporations. The first corporation, Broc. Limited (Broc), held the real estate on which the business was located. The second corporation, Delaine Auto Sales, Inc. (Delaine), assumed the ongoing automobile repair and sales operation. Both entities were closely held corporations owned equally by Benedetto, Anthony, and Biagio, and Delaine actually paid a monthly rent to Broc. Benedetto was installed as the president of Delaine.

Beginning in 1987 the relationship between Benedetto and his two brothers, Anthony and Biagio, began to deteriorate as the brothers quarreled over the management of

the family business. Benedetto was determined to ensure that his two sons would each eventually hold a one-third ownership interest in Delaine. This would make his two sons and Biagio's son, Thomas, equal shareholders in the business just as Benedetto, Anthony, and Biagio had been. In this manner Benedetto's sons would hold a two-thirds majority of the Delaine stock and could effectively control the business. Anthony and Biagio, however, did not share in Benedetto's desire to see his sons control Delaine. Anthony, who had no sons, wanted to leave his ownership interest in Delaine to his wife. Benedetto was adamantly opposed to this plan because it was Anthony's one-third ownership interest in the business that Benedetto desperately wanted for his own sons so that his plan might be realized. Biagio, for his part, saw no reason why Benedetto's sons should be given more than their father's one-third ownership interest in Delaine. When it became evident to Benedetto that his machinations had come to naught, he became recalcitrant and, in time, refused to speak to either of his brothers. Meanwhile Biagio and Anthony had became increasingly concerned about Benedetto's decisions to issue bonuses to himself, his two sons, and a bonus or gift to his girlfriend who was not employed by Delaine. On August 1, 1990, distressed over Benedetto's divisive attitude regarding the future of the business and his failure to effectively manage Delaine's cash reserves, Biagio and Anthony at a corporate meeting voted Benedetto out as president of Delaine and revoked his check-writing authority. Benedetto, however, remained on the payroll at Delaine, and his one-third ownership interest in the company remained intact.

Even though he continued to report to Delaine each morning, however, Benedetto refused to perform any body shop work after he had been removed from the management of the company and instead stubbornly sat in the company lunchroom, reading magazines. The nadir of the brothers' relationship came in 1990 at Thanksgiving when Benedetto, after receiving, like all the other employees,

a holiday turkey, angrily returned his employee bonus turkey via express air mail aimed in the direction of Anthony's head.[1] Fortunately his aim was as errant as his brotherly love.

As 1990 began, Delaine entered an economic swoon, and employee layoffs became necessary. First, the brothers decided to layoff the sons of both Biagio and Benedetto temporarily with the hope that later they would be able to return at full pay. Benedetto still continued to refuse to do any work, and the business suffered further still when its key body-repair employee, Pat Rega, suffered a heart attack.

Because of operating cash flow problems, the corporation's stockholders buyout insurance policy was surrendered and cashed in December 1990 in order to obtain $27,000 for operating capital. Adding to the corporate woes, a short time later, on January 1, 1991, the state banking crisis climaxed, and the Governor, by executive order, closed a number of state banking institutions including Greater Providence Trust, in which Delaine had some $78,000 on deposit, much of which was needed for operating capital. Because those accounts were "frozen" by the executive order, some $75,000 in Delaine checks made payable to various suppliers and for corporate obligations "bounced". Anthony, in order to keep Delaine operating, had to make payback arrangements with Delaine's creditors. In order to assist in and meet those obligations, Biagio and Anthony put $38,000 and $8,300, respectively, of their personal funds into Delaine. In order to cut expenses further, Benedetto's son Anthony B., the last re-employed son of the brothers, was then laid off. Benedetto, however, without authorization called the payroll company and had his son returned to the payroll and obtained payroll checks for him. Benedetto then attempted to attack and assault his brother Anthony, but was prevented from doing so by one of Delaine's employees.

Benedetto, although not contributing any work effort to Delaine, continued throughout

---

1. Benedetto's reason for doing so was that he believed that the distribution of turkeys during Thanksgiving was something reserved for Delaine employees, and because he was a one-third shareholder, he was above that status and felt insulted by being treated as a mere employee.

1991 to receive his $30,122 annual salary despite Delaine's business downslide. On January 2, 1992, his employment with Delaine was terminated by Biagio and Anthony. In May of 1992 Anthony suffered a heart attack, and Delaine's existence as a going business appeared doomed.

Fortunately, on September 25, 1992, a mortgage held by Broc, called the Mangiarelli mortgage, was paid, resulting in the sum of $79,545.55 coming to Broc. Anthony, who had not returned to full-time work following his heart attack but was still managing Delaine, first distributed $5,000 of that money to each of the stockholders and then authorized $64,000 in loans from Broc to Delaine in order to keep the automobile-repair business afloat.

On October 30, 1992, Benedetto filed suit in the Providence County Superior Court, claiming that Anthony and Biagio had breached their fiduciary duties to him. Biagio and Anthony counterclaimed, alleging that Benedetto had breached his fiduciary duty to them by failing to put forth his most loyal and faithful efforts on behalf of Delaine and Broc.

Despite the pending action by Benedetto, Delaine continued to operate but at a continuing loss during 1993–1994. Biagio's son, Thomas, who was then performing the bulk of the managerial work, unfortunately suffered his second heart attack, and unsure of the future of Delaine, Anthony and Biagio in December 1994 closed Delaine's doors, and Broc rented the property to another company.

On May 29, 1996, Benedetto's civil action was reached for trial. A six-day bench trial ensued during which all three Broccoli brothers testified in excruciating detail concerning the demise of their family business and the feud between Benedetto and his two brothers, Biagio and Anthony. After the trial but before decision by the trial justice, Biagio and Anthony filed a petition seeking the appointment of a receiver pursuant to G.L.1956 § 7–1.1–90[2] in order to liquidate the assets of Delaine and Broc, thereby effectively dissolving those companies. Benedetto opposed this petition and sought instead to force his brothers to purchase his one-third interest in both corporations for their value at the time he was removed as Delaine's president.

On June 27, 1996, the trial justice issued her decision from the bench. The trial justice granted the petition of Biagio and Anthony and appointed a receiver in order to effectively dissolve Delaine and Broc. The trial justice's decision to order this dissolution was based upon both the inability of the brothers to reconcile their differences and to communicate with one another and the fact that Anthony and Biagio, the two brothers requesting the appointment of a receiver, owned more than one-half of the corporate stock in both Delaine and Broc.

The trial justice further found that Anthony had breached his fiduciary duty to Broc by authorizing $64,000 in loans to Delaine without having first given notice to Benedetto. Relying upon this finding, the trial justice ordered Anthony to repay the $64,000 to Broc so that Benedetto could collect his one-third share of that money.

Both parties now appeal. Benedetto, in his appeal, claims that the trial justice erred in several of her factual determinations concerning his personal character and in appointing a receiver in order to dissolve Delaine and Broc. We reject Benedetto's claims and further find that the trial justice acted properly in appointing a receiver in order to dissolve both Delaine and Broc.

■ Section 7–1.1–90 empowers the Superior Court to grant a shareholder's petition for the establishment of a receivership when-

---

**2.** General Laws 1956 § 7–1.1–90, entitled "Jurisdiction of court to liquidate assets and business of corporation," reads in relevant part:

"The superior court shall have full power to liquidate the assets and business of a corporation:

(1) In an action by a shareholder when it is established that

* * *

(E) Two (2) or more factions of shareholders are divided and there is such internal dissension that serious harm to the business and affairs of the corporation is threatened; or

(F) The holders of one-half (1/2) or more of all the outstanding capital stock of the corporation shall have voted to dissolve the corporation."

ever the shareholders are so divided and dissentious that the corporation is threatened. Clearly this is an excellent example of just such a situation. Benedetto had not spoken constructively either to Biagio or to Anthony in over five years. It was abundantly obvious that Benedetto was no longer able to work with his brothers in any reasonable fashion. Even if Benedetto, Biagio, and Anthony had remained best friends, the trial justice's appointment of a receiver would still be correct. Biagio and Anthony, holders of two-thirds of the stock in both Delaine and Broc, petitioned together for the dissolution of those companies. The applicable statute, § 7–1.1–90, provides that any majority of shareholders may compel the liquidation of a corporation. Under this provision Benedetto's one-third ownership interest had to yield to the majority's desire to liquidate the companies. The trial justice's decision to grant Biagio and Anthony's petition seeking the appointment of a receiver in order to dissolve Delaine and Broc was therefore correct.

■ Anthony, in his appeal, claims that the trial justice erred in finding that he had breached his fiduciary duty to Broc by lending money from Broc to Delaine. We agree. The trial justice's finding that Anthony had breached his fiduciary duty was based upon Anthony's failure to notify Benedetto concerning the $64,000 in loans from Broc to Delaine that Anthony had authorized. We find that this failure did not constitute a breach of Anthony's fiduciary duties for three reasons. First, the past practice and structure of the brothers' corporate holdings supported the propriety of this type of transaction. Second, the primary reason Benedetto did not receive notice of the transaction was his own intransigence. Finally, even if Benedetto had received notice and a corporate meeting had been held, the loan to Delaine would still have been approved by Broc as a result of a majority vote by Anthony and Biagio.

■ This Court has recognized that "a fiduciary obligation, similar to that imposed upon partners in a partnership, does exist among the shareholders in a small family type of or close corporation." *A. Teixeira & Co. v. Teixeira*, 699 A.2d 1383, 1388 (R.I.

1997). However, on the particular facts presented in this case, we conclude that Anthony did not breach his fiduciary duties to either Benedetto or Broc.

On the contrary, Anthony, in authorizing the $64,000 in loans to Delaine, was desperately attempting to save the family business which all three brothers owned equally. Broc, the lender corporation, was merely that part of the brothers' holdings that controlled the real estate upon which Delaine operated. Those two legal entities were at all times considered two halves of the same whole. Therefore, a loan from Broc to Delaine was no different from an individual bank customer's transferring money from his or her savings account to his or her checking account. It is disingenuous for Benedetto to claim now that he was an interested and damaged stockholder in Broc after years of having ignored his own duties to both Broc and Delaine. Indeed, the company to which Broc lent the money was still equally owned by all three brothers.

Benedetto's claim that he no longer had an interest in Delaine because of his ouster in 1990 rings hollow. Benedetto brought that misfortune upon himself. In ousting Benedetto from the presidency of Delaine, Anthony and Biagio were, once again, simply attempting to rescue the family business, which Benedetto was neglecting because of his own personal bitterness at the failing of his plot to wrest control of Delaine from his brothers. Anthony and Biagio did not "oust" Benedetto so much as they officially recognized the reality that he was no longer contributing to the business.

Finally, even if Benedetto had been notified of a corporate meeting at which the shareholders could have voted to lend $64,-000 to Delaine, there is no showing that he could have halted the transaction. Anthony was the brother in charge of these decisions, and the record is conclusive that Biagio sided with Anthony on all matters concerning the business. Therefore, we conclude that Anthony's actions in authorizing the $64,000 in loans from Broc to Delaine, while not ideal business practice, did not amount to a breach of his fiduciary duties to Benedetto or Broc,

and accordingly Anthony is not required to reimburse Broc that amount.

For the foregoing reasons the appeal of Benedetto A. Broccoli, Jr. is denied and dismissed. The appeal of Anthony and Biagio Broccoli is sustained, and the final judgment of the Superior Court is vacated. The papers of this case are remanded to the Superior Court with instructions to enter judgment in accordance with this opinion.

WEISBERGER, C.J., and GOLDBERG, J., did not participate.