DECISION
Before this Court are cross-motions for summary judgment as to Count I of the Plaintiff's complaint. Both parties have filed timely objections thereto. Jurisdiction is pursuant to G.L. 1956 §§ 7-16-40 and 8-2-14.
 FACTS AND TRAVEL
The genesis of this action is rooted in the acquisition of undeveloped property, the organization of a limited liability company, and subsequent disagreements that arose among the members of the company. At some point in early 2000, Jackson P. Despres ("Mr. Despres" or "Defendant") approached Peter Marsh ("Mr. Marsh") regarding the possibility of jointly purchasing certain undeveloped real estate located on Little Pond Road in Cumberland, Rhode Island (hereinafter the "Property"). At the time, the Property consisted of two contiguous lots that were separately owned. In September of 2000, Mr. Despres and Mr. Marsh successfully negotiated agreements to purchase the two respective lots.
Two years later, on November 15, 2002, Mr. Marsh and his wife, Anne Marsh ("Mrs. Marsh") (collectively the "Plaintiffs"), and Mr. Despres and his wife, Nanci Despres ("Mrs. Despres"), executed an Operating Agreement (hereinafter "Operating Agreement" or "Agreement") that formally organized Billington Farms, LLC ("LLC"). By the terms of the Operating Agreement, Mr. Despres was appointed the sole manager of the LLC, and each of the four members obtained a one-quarter membership interest in the LLC. On December 10, 2002, the LLC acquired the Property, and thereafter subdivided it into 29 individual lots. Today, the Property is called the "Longbrook" subdivision.
Article 5.04[1] of the Operating Agreement permits the LLC to contract with or enter into various other arrangements with "affiliated persons." Article 10 of the Operating Agreement defines an "affiliated person" as "any (i) Person who owns directly or indirectly 10% or more of the beneficial ownership in such Person; (ii) one or more Legal Representatives of such Person and/or any Persons referred to in the preceding clause (i); (iii) entity in which any one or more of such Person and/or the Persons referred to in the preceding clauses (i) and (ii) own directly or indirectly 10% or more of the beneficial ownership." Thus, the Operating Agreement permits the LLC to contract with Mr. and Mrs. Marsh, Mr. and Mrs. Despres, as well as any entity in which any of these individuals owns a 10% or more interest.
The LLC entered into contracts with two affiliated entities: Marsh Builders, Inc. ("MBI"), a Rhode Island corporation owned and operated by Mr. and Mrs. Marsh, and Smithfield Peat Company ("SPC"), a Rhode Island corporation owned and operated by Mr. and Mrs. Despres. On February 23, 2003, the LLC contracted with SPC to construct a road on the Property for a total fixed price of $1,240,000. On February 24, 2003, the LLC engaged MBI to construct up to 27 single family dwellings on the Property, without, however, specifying an exact price to be paid for each home. Mr. Despres engaged Michael A. Kelly, Esquire ("Mr. Kelly") to perform legal services in connection with the acquisition, subdivision, and development of the Property. Mr. Kelly acquired two of the 29 lots at this time.
On April 4, 2003, Citizens Bank issued a Land Development Loan ($1,560,000), a Revolving Construction Loan ($1,000,000), and a Standby Letter of Credit ($926,382) (collectively the "Loans" or "Citizens Loans") to the LLC. During this period of time, MBI began constructing individual homes, while SPC began the process of road work and site work. Disputes, however, arose.
In connection with the LLC's contract with SPC, the Marshes disputed certain billings made by SPC over and above the fixed contract price for site work, and alleged that Mr. Despres failed to pass on certain discounts. In particular, the Plaintiffs assert that SPC, under the direction of Mr. Despres, failed to pass on to the LLC a ten-percent discount it received from a sub-contractor who performed blasting on a ledge. Likewise, the Marshes maintain that Mr. Despres directed SPC to bill, in contravention of normal business practice, the LLC for removal of blasted rock. This rock was crushed and resold back to the LLC. In connection with the LLC's contract with MBI, the Marshes contend that Mr. Despres refused to pay MBI for individual houses that were already constructed, and that he declined to engage in good-faith negotiations as to what was an appropriate payment for on-going work. On May 3, 2004, the Marshes directed Mr. Despres to discontinue payments to SPC.
On May 5, 2004, Mr. Despres signed and recorded a "Notice of Intention to Do Work Or Furnish Materials Or Both" (hereinafter "Lien") against the Property and in favor of SPC for $1,034,846. The Marshes received notice of the Lien two weeks later. Citizens Bank ("Citizens") notified the LLC, on May 24, 2004, that the Lien caused a technical default on the Loans, and indicated that it would foreclose on the Property unless the Lien was removed within 30 days. On May 27, 2004, Mr. Despres mailed a letter to MBI instructing it to cease building homes, alleging that MBI had violated its contract with the LLC. On June 3, Mr. Kelly, on behalf of the LLC, wrote to Citizens requesting an additional ten days to resolve the dispute between SPC and the LLC. Citizens granted this request.
The Marshes filed their original Complaint on June 11, 2004. The Complaint contained four counts: Count I set forth a breach of fiduciary duty claim; Count II alleged a breach of contract between MBI and the LLC; Count III sought a declaratory judgment as to the SPC road contract; and Count IV prayed for dissolution of the LLC. Subsequent to the filing of the Complaint, Citizens swept all of the LLC's accounts of approximately $600,000, and refused to extend any further financing.
On July 16, 2004, the parties entered into a Consent Order, whereby Counts II and III were submitted to arbitration, and dissolution was to be avoided by a "buyout" of the Marshes interest in the LLC. A year later, by the terms of the Arbitrator's Award and Decision (hereinafter "Arbitrator's Award" or "Award"), MBI was awarded $692,849 — plus prejudgment interest — from the LLC, while SPC was awarded $518,827 — plus prejudgment interest — from the LLC.
On October 28, 2005, the Court entered an Order, in accordance with R.I. Super. Ct. R. Civ. P. 54(b), affirming the award and directing final judgment on Counts II and III of the Plaintiff's Complaint. The Superior Court stayed trial, however, on Counts I and IV, pending the Supreme Court's resolution of the Defendant's appeal of the judgment. On January 26, 2006, the Supreme Court entered an Order, holding the Defendant's appeal in abeyance pending the resolution of all claims, vacating the stay of trial previously issued by the Superior Court, and staying the Superior Court's earlier judgment.
On March 14, 2006, Mr. Despres, pursuant to R.I. Super. Ct. R. Civ. P. 56, moved for summary judgment as to Count I of the Plaintiff's complaint. Ten days later, the Plaintiffs filed a timely objection, and cross-moved for summary judgment as to the same Count. This decision addresses these two motions.
 STANDARD OF REVIEW
It is well settled that "[s]ummary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. BurrillvilleRacing Association, 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v.Kowal, 419 A.2d 297 (R.I. 1980)); see also Super. Ct. R. Civ. P. Rule 56. During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano,603 A.2d at 320 (citing Lennon v. MacGregor, 423 A.2d 820 (R.I. 1980)). The Court's purpose during the summary judgment procedure is issue finding, not issue determination. Industrial NationalBank v. Peloso, 121 R.I. 305, 397 A.2d 1312, 1313 (R.I. 1979) (citing O'Connor v. McKanna, 116 R.I. 627, 359 A.2d 350 (R.I. 1976); Slefkin v. Tarkomian, 103 R.I. 495, 238 A.2d 742 (R.I. 1968)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Industrial NationalBank, 397 A.2d at 1313 (citing Rhode Island Hospital TrustNational Bank v. Boiteau, 119 R.I. 64, 376 A.2d 323 (R.I. 1977)).
However, "a party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." Weaver v. Am. Power Conversion Corp.,863 A.2d 193, 197 (R.I. 2005) (quoting Accent Store Design, Inc.,674 A.2d 1223, 1225 (R.I. 1996)). Thus, "they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co.,705 A.2d 969 (R.I. 1998) (citing St. Paul Fire Marine Insurance Co. v.Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994)).
 ANALYSIS
The Plaintiffs allege that Mr. Despres breached his fiduciary duties by engaging in oppressive behavior and self-dealing. In particular, the Marshes claim that they were oppressed when Mr. Despres, as manager of the LLC, did not pay fees that were owed to MBI for work it had already performed, and provided written notice that the MBI contract was terminated. Likewise, the Marshes assert that they were oppressed when Mr. Despres, as director of SPC, billed the LLC over the fixed contract price, and filed the Lien against the LLC. The Marshes allege that Mr. Despres engaged in self-dealing when he: diverted excess fees to SPC, failed to pass on a ten-percent blasting discount to the LLC, charged the LLC for the removal of blasted rock, resold the blasted rock back to the LLC, and caused the LLC to transfer two lots to Mr. Kelly as payment, in part, for legal services performed for Mr. Despres in a personal capacity.
The gravamen of the Defendant's argument is that the breach of fiduciary claim should fail because the Operating Agreement explicitly permitted transactions between the LLC and SPC. Mr. Despres asserts that because the Operating Agreement sanctioned dual-interest contracts, his actions (and thereby his duties), as both manager of the LLC and as a principal of SPC, can be categorized and demarcated into: (a) those actions made on behalf of the LLC, and (b) those actions made on behalf of SPC. In addition to this argument, the Defendant asserts that his actions are protected by the business judgment rule, that the Consent Order precludes the breach of fiduciary duty claim on grounds of res judicata and collateral estoppel, and that the Plaintiffs have failed to properly plead a derivative claim.
 Breach of Fiduciary Duty
As the controlling manager of the LLC, Mr. Despres owed the LLC and the Marshes a fiduciary duty of the utmost care and loyalty. Neither party, however, has shown that there is no genuine issue as to a material fact, whereby this Court could declare, as a matter of law, that Mr. Despres did or did not breach his duty owed to the Plaintiffs. In short, genuine issues as to whether Mr. Despres' actions breached his duty to the Marshes have yet to be resolved.
Directors of a corporation owe a fiduciary duty of care and loyalty to the corporation and to the corporation's shareholders.See Hendrick v. Hendrick, 755 A.2d 784, 789 (R.I. 2000). In a partnership, the partners owe a fiduciary duty not only to the partnership, but to the partners themselves. See Sullivan v.Hoey, 102 R.I. 487, 488, 231 A.2d 789, 790 (1967). This duty is more exacting and burdensome than the duty owed by the directors of a corporation; it is a duty of the utmost care and loyalty.See Tomaino v. Concord Oil, 709 A.2d 1016, 1021 (R.I. 1998). Our Supreme Court has not yet expounded, however, on the quality and scope of the fiduciary duty owed by managers of a limited liability company to its members. Cf. Charles W. Murdock,Limited Liability Companies in the Decade of the 1990s:Legislative and Case Law Developments and Their Implications forthe Future, 56 Bus. Law. 499, 499 (2001) (noting that there has been a relative absence of litigation as to the fiduciary duties of LLC members and managers). Other jurisdictions have noted that a LLC shares characteristics of both corporations and partnerships. See, e.g., Great Lakes Chem. Corp. v. MonsantoCo., 96 F. Supp. 2d 376, 383 (D. Del. 2000); Elf Atochem N.Am., Inc. v. Jaffari, 727 A.2d 286, 290 (Del. 1999).
In the past, when there has been a derth of Rhode Island corporate law, our Courts have looked to Delaware for fiduciary legal principles. See, e.g., Bove v. Community Hotel Corp.of Newport, R.I., 105 R.I. 36, 249 A.2d 89, 93 (R.I. 1969). As a general rule, under Delaware law, managers of a LLC are held to the same fiduciary bar as a director of a corporation. See,e.g., Metro Commun. Corp. BVI v. Advanced Mobilecomm Techs.Inc., 854 A.2d 121, 155 (Del.Ch. 2004). There is no question that Mr. Despres, as manager of the LLC, owed the LLC and the Marshes, as members of the LLC, a fiduciary duty akin to the duty owed by directors to their corporation. This duty is mandated by statute as well. See § 7-16-17(a) (stating that a manager "shall discharge his or her managerial duties in good faith, with the reasonable care that an ordinary prudent person in a similar position would use under the circumstances, and in the manner the manager reasonably believes to be in the best interests of the limited liability company."). But our Supreme Court, unlike Delaware, has recognized that shareholders in a closely held corporation may owe to each other a duty of utmost care and loyalty — a duty similar to that pledged by partners in a partnership. See Broccoli v. Broccoli, 710 A.2d 669, 673
(R.I. 1998)
In A. Teixeira Co. v. Teixeira, the Court concluded that "on the basis of the small number of shareholders in plaintiff corporation, the active participation by these shareholders in management decisions, and their close and intimate working relations, that the shareholders of [the closely held] corporation, by acting as if they were partners, thus assumed a fiduciary duty toward one another and their corporation."699 A.2d 1383, 1387 (R.I. 1997). In that case there were only six shareholders in the corporation. Id. at 1384. Here, the Marshes and the Despres are the sole members of a four person limited liability company. Likewise, the business structure evidences that the Marshes and Despres actively participated in decisions and shared a close and intimate working relationship. For example, the contracts entered into by the LLC were signed not only by Mr. Despres as manager, but also by Mr. Marsh. And, as Mr. Despres points out in his own memoranda, payments by the LLC to SPC ceased when Mr. Marsh directed the Defendant to do so. In short, the very nature of the entire land development project suggests that the members of the LLC acted as if they were partners — the Marshes, through their corporation, MBI, were to construct the individual houses, while the Despres, through their corporation, SPC, were to perform site work and road work. Accordingly, due to the paucity of members, the active participation by the Marshes, and the intimate relationship between the four, the members of the LLC assumed a heightened fiduciary duty not only to the LLC, but to each other — a duty of utmost care, loyalty, and good faith.
Neither party, however, has shown, as a matter of law, that Mr. Despres did or did not breach this strict duty of loyalty, care, and good faith. As already noted, the Plaintiffs allege acts of oppression and self-dealing by Mr. Despres. In Hendrick, the Supreme Court noted that oppressive conduct may be defined as "conduct `that substantially defeats the `reasonable expectations' held by minority shareholders in committing their capital to the closed corporation,'" 755 A.2d at 791 (citing Inre Rambusch, 143 A.D.2d 605, 606, 533 N.Y.S.2d 423, 425
(N.Y.App.Div. 1988), and conduct "which deviates from a heightened good faith standard that exists in closely held corporations."Id. The Court opined that "oppression within a closely held corporation can manifest itself as a series of acts or a pattern of conduct by the [controlling] shareholders that can have the cumulative, overall effect of freezing out or depriving the [non-controlling] shareholder of a voice in the corporation, as well as manifesting itself in more distinct, identifiable actions." Id. at 792.
Self-dealing occurs when a corporate fiduciary enters into a transaction with a corporate entity that he or she also serves as a fiduciary. See Tomaino, 709 A.2d at 1021. Self-dealing may violate the duty of loyalty owed by the fiduciary to the company, when a transaction has not been ratified by disinterested members, or when it is unfair to the corporation. Id. These transactions are not voidable per se, but will be vigorously scrutinized by the courts. Id. Furthermore, when an individual serves in a dual capacity, such as being the director of two transacting corporations, the duty of loyalty is not diluted — the individual must exercise his or her duties "in light of what is best for both companies." Weinberger v. UOP, Inc.,457 A.2d 701, 711 (Del. 1983) (holding that dual fiduciary duties applied where the individual was director of both the parent and subsidiary corporation).
With respect to the oppressive acts, genuine issues remain as to whether the Marshes' reasonable expectations were substantially defeated when Mr. Despres — as manager of the LLC — supposedly did not pay fees due to MBI, and provided written notice that the MBI contract was terminated, and when Mr. Despres — as director of SPC — billed the LLC over the fixed contract price, and filed a Lien against the LLC. Likewise, with respect to the self-dealing claims, genuine issues of material fact still remain as to the fairness of Mr. Despres' other managerial acts, which include payments made to SPC on the road contract, the alleged improper charges for removal and resale of blasted rock, the purported failure to pass a ten-percent discount from a sub-contractor, and the in-kind payment of two lots made to Mr. Kelly. These claims ask the Court to assess the reasonableness and fairness of Mr. Despres' actions. To resolve these issues now would require the Court to weigh the evidence — an act which is beyond the scope of a summary judgment motion.
The fact that the parties entered into an Operating Agreement which envisioned transactions between "affiliated person," does not alter this Court's conclusion. The Operating Agreement addresses the initial transaction whereby SPC and MBI were permitted to transact with the LLC. This Agreement does not, however, dilute the on-going duty owed by Mr. Despres to the LLC and its members. As noted, directors who have conflicting dual interests in an interested transaction owe a continuing duty to both of the corporations and shareholders. See Weinberger,457 A.2d at 711.
 Business Judgment Rule
The Defendant avers that his actions as manager are protected by the business judgment rule. The business judgment rule acts as a rebuttable presumption that directors of a corporation, or managers of a LLC, have acted with due care, in good faith, and in the best interest of the corporation or company. See §7-16-17; see also Omnicare, Inc. v. NCS Healthcare, Inc.,818 A.2d 914, 928 (Del. 2003). But this presumption can only be claimed by disinterested directors. See Aronson v. Lewis,473 A.2d 805, 812 (Del. 1984). An interested director is one who appears on both sides of a transaction, or who plans to derive personal financial benefit from a transaction. Id. In this case, it is apparent that the alleged breaches stem from actions Mr. Despres made as an interested manager. The claims of self-dealing and oppression flow from actions where Mr. Despres was both manager of the LLC and the owner of SPC, an affiliated entity. Accordingly, because Mr. Despres appeared on both sides of the SPC/LLC contract, and gained personal financial benefit therefrom, his actions are not protected by the business judgment rule.
 Claim Preclusion and Issue Preclusion
Mr. Despres' ultimate defense is that the breach of fiduciary duty count, Count I, is precluded by the doctrines of equitable estoppel and res judicata. The Defendant asserts that the language in the Consent Order precludes the breach of fiduciary claim. In particular, Mr. Despres points to paragraph 8 of the Consent Order, which states in full:
 "The Marshes consent to Defendant, Jackson Despres electing to avoid dissolution and purchasing the Marshes' fifty (50%) interest in Billington Farms (the "Units") following the procedures set forth in R.I. Gen. Laws § 7-1.1-90.1, except as modified herein. The Marshes shall transfer all right, title and interest to the Units upon payment to the Marshes of an advance in the amount of $1,121,892.00, toward the buyout price as will be determined by the Court or otherwise agreed by the parties, which in no event shall be less than $1,121,891.00, and the Marshes receipt of sufficient security as set forth below. Any underpayment shall be reconciled following the conclusion of the SPC/MBI arbitrations and the valuation procedure set forth below. Prejudgment interest shall not run against the $1,121,891.00 advance. The parties agree that this transaction results in a termination of the LLC in accordance with Internal Revenue Code Section 708(b)(1)(B)."
Mr. Despres claims that aside from Counts II and III, which are explicitly addressed in paragraphs 5 and 6 of the Consent Order, the "buyout" language in paragraph 8 precludes any further litigation as to Count I.
A consent agreement entered into between parties has "the full force and effect of a decree and is res judicata." C.D. BurnesCo. v. Guilbault, 559 A.2d 637, 640 (R.I. 1989). "The doctrine of res judicata relates to the preclusive effect on a final judgment in an action between the parties." Plunkett v. State,869 A.2d 1185, 1187 (R.I. 2005). The doctrine applies when "there exists identity of parties, identity of issues, and finality of judgment in an earlier action." Beirne v. Barone, 529 A.2d 154,157 (R.I. 1987). The term "res judicata" actually refers to two preclusion doctrines: "(1) collateral estoppel or issue preclusion; and (2) res judicata or claim preclusion."Plunkett, 869 A.2d at 1188.
In Plunkett, the Rhode Island Supreme Court chose to follow the United States Supreme Court by electing to use the terms "claim preclusion" and "issue preclusion," instead of res judicata, so as to avoid confusion. Id. The Court explained that "`[i]ssue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided'," while "`[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.'" Id. (citing Migra v. Warren City SchoolDistrict Board of Education, 465 U.S. 75, 77n. 1 (1984)). Thus, issue preclusion operates as a bar to "relitigation of only those issues that actually were decided in the prior law suit," while claim preclusion operates to preclude the "`relitigation of all the issues that were tried or might have been tried in the original suit.'" Foster-Glocester Regional School Committee v.Board of Review, 854 A.2d 1008, 1014n. 2 (R.I. 2004).
Before substantively addressing the issues of claim preclusion and issue preclusion, this Court's analysis is subject to another fundamental legal precept: the "plain meaning" rule of contract construction. Generally, "when, in the course of business transactions between people or corporations, free and uncoerced understandings purporting to be comprehensive are solemnized by documents which both parties sign and concede to be their agreement, such documents are not easily bypassed or given restrictive interpretations." Int'l Bus. Machs., Corp., v.Catamore Enters., Inc., 548 F.2d 1065, 1073 (1st Cir. 1976). This general proposition is applied through the "plain meaning" rule of construction for contracts. The rule provides that where a court finds that the terms of a contract are clear and unambiguous, the task of judicial construction is at an end and the contract terms must then be applied as written and the parties bound by them. See Textron, Inc. v. Aetna Cas. Sur.Co., 638 A.2d 537, 539 (R.I. 1994). The language of the Consent Order is clear and unambiguous: Counts II and III were submitted to arbitration, and the Marshes agreed to Mr. Despres' electing to avoid dissolution and purchasing the Marshes' interest in the LLC. Count I of the Plaintiff's complaint is not explicitly addressed. This Court declines to read Count I into the Consent Order. Accordingly, Count I is not an issue that has been litigated or decided, nor is it an issue which should have been expressly addressed in the Consent Order.
 Derivative or Direct Claim
The Defendant asserts that the Plaintiffs have not properly plead a derivative claim for the alleged breach of fiduciary duties. This Court concludes that the claim is derivative, but may be brought as a direct claim.
As a general rule, a claim is derivative if the injury is mediated through the corporation or company. See Kramer v.Western Pacific Industries, Inc., 546 A.2d 348, 351 (Del. 1988). In Rhode Island, by statute, derivative claims brought by a member on behalf of an LLC must meet certain conditions. See
G.L. § 7-16-56. Suits initiated pursuant to § 7-16-56 must be plead in accordance with § 7-16-57, which requires that the complaint "set forth with particularity the effort of the plaintiff to secure initiation of the action by the managers or the members who would otherwise have the authority to cause the limited liability company to sue in its own right or why such effort was not likely to succeed." It is indisputable that the Plaintiffs have not properly plead a derivative action. Regardless of particularity, the Plaintiffs do not set forth in their complaint, at all, any effort to secure the initiation of the breach of duty claim by the manager or that this effort was not likely to succeed. But this absence does not address the preliminary question of whether the claim, in and of itself, is derivative or direct.
Whether or not a suit is derivative in nature is a question for the Court. See Dowling v. Narragansett Capital Corporation,735 F.Supp. 1105, 1113 (D.R.I. 1990). In Tooley v. Donaldson,Lufkin Jenrette, Inc., 845 A.2d 1031 (Del. 2004), the Delaware Supreme Court enunciated a new, simplified standard to determine if a claim is derivative or direct. In making this determination, a court should ask itself two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" Id. at 1033. Discussing the first prong of this standard, the court approvingly referred to the test promulgated by the American Law Institute ("ALI"), which states:
 "A direct action may be brought in the name and right of a holder to redress an injury sustained by, or enforce a duty owed to, the holder. An action in which the holder can prevail without showing an injury or breach of duty to the corporation should be treated as a direct action that may be maintained by the holder in an individual capacity." 2 American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 7.01(b) (1994).
Applying the first prong of the Tooley test, this Court concludes that the breach of duty claim is derivative because any fiduciary breach by Mr. Despres strikes at the Marshes' interest in the LLC. The Marshes' allegations — failing to pay fees due to MBI, billing the LLC over the fixed contract price, filing a Lien against the LLC, terminating the MBI contract, neglecting to account for the reuse of blasted rock and a ten-percent discount, and improperly paying Mr. Kelly — are all dependent on the Marshes' interest in the LLC. But for their membership in the LLC, no fiduciary duty would be owed to them. Applying the second prong of the Tooley test, it is evident that any potential recovery that the Marshes may ultimately receive will first be accounted through the LLC, because the harm was to the Marshes' interest in the LLC. For these reasons, the Court preliminarily concludes that the Marshes' claim is derivative in nature.
The Tooley test, however, is a broad tool fashioned for the general corporate cause of action. As a general rule, derivative suits are designed to protect "shareholders of corporations from the designing schemes and wiles of insiders who are willing to betray their company's interests in order to enrich themselves."Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 371 (1966). The rationale underlying the rule posits that the derivative requirement 1) prevents a multiplicity of lawsuits by shareholders; 2) protects corporate creditors by putting proceeds of the recovery back in the corporation; 3) guards the interests of all shareholders by increasing the value of their shares, instead of potentially prejudicing the rights of shareholders not a party to the suit; and 4) adequately compensates the injured shareholder by increasing the value of his shares when any recovery is put back into the corporation. See Simmons v.Miller, 544 S.E.2d 666, 674 (Va. 2001) (citing Thomas v.Dickson, 301 S.E.2d 49, 51 (Ga. 1983)).
In the context of closely held corporations, the ALI has promulgated a more liberal approach to standing,[2]
recommending that:
 "the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested person." A.L.I., Principles of Corporate Governance: Analysis and Recommendations § 7.01(d).
This exception has been adopted by a number of courts. See,e.g., Durham v. Durham, 871 A.2d 41, 46 (N.H. 2005);Trieweiler v. Sears, 689 N.W.2d 807, 838 (Neb. 2004); Mynattv. Collis, 57 P.3d 513 (Kan. 2002); Aurora Credit Services v.Liberty West, 970 P.2d 1273 (Utah 1998); Barth v. Barth,659 N.E.2d 559 (Ind. 1995); Derouen v. Murray, 604 So. 2d 1086
(Miss. 1992); Schumacher v. Schumacher, 469 N.W.2d 793 (N.D. 1991). But see, Simmons, 544 S.E.2d at 670 (declining to adopt the 7.01(d) exception); Landstrom v. Shaver,561 N.W.2d 1, 14 (S.D. 1997) (same). The courts that have adopted the exception have reasoned that the ALI approach adequately addresses the underlying rationale of the general derivative requirement. Conversely, those courts which have declined to adopt the exception have concluded that to do so would disrupt the consistent application of commercial rules — rules that are created to promote predictability.
This Court, following the lengthening parade of state supreme courts, today adopts the ALI exception in the context of a closely held limited liability company, because it is a narrowly tailored deviation that provides for a more flexible method of addressing standing, and eliminates "burdensome, and often futile, procedural requirements." Durham, 871 A.2d at 46. Predictability is an important goal of our commercial rules, but the narrowness of this exception ensures that it will not interfere with the future homogeneous application of the general derivative test.
Employing the ALI approach, the Court finds that the LLC is exempt from the pleading restrictions imposed by § 7-16-57. A direct claim will not open up the LLC to a multiplicity of actions, nor will it disturb a fair distribution of any potential recovery, because the Marshes and the Despreses are the only members of the LLC. Likewise, the material interests of creditors will not be prejudiced, because, quite simply, there are no other creditors. The claim is properly plead as a direct cause of action.[3]
 CONCLUSION
For the foregoing reasons, both summary judgment motions are hereby denied. Counsel shall enter an order pursuant to this decision.
[1] Article 5.04 states in full:
 "Contracts With Affiliated Persons. With the Approval of the MANAGER and the Consent of the MEMBERS in each case, the LLC may enter into one or more agreements, leases, contracts or other arrangements for the furnishing to or by the LLC of goods, services or space with any MEMBER, MANAGER or Affiliated Person, and may pay compensation thereunder for such goods, services or space, provided in each case the amounts payable thereunder are reasonably comparable to those which would be payable to unaffiliated Persons under similar agreements, and if the determination of such amounts is made in good faith it shall be conclusive absent manifest error."
[2] For a discussion of the evolving debate as to derivative and direct claims in the context of limited liability companies,see generally, Daniel S. Kleinberger, Direct VersusDerivative and the Law of Limited Liability Companies, 58 Baylor L. Rev. 63 (2006); James R. Burkhard, LLC Member and LimitedPartner Breach of Fiduciary Duty Claims: Direct or DerivativeActions?, 7 J. Small Emerging Bus. L. 19 (2003).
[3] Under the unique circumstances of this case, this conclusion accords with the language of § 7-16-56, which states that "[a] member may bring an action on behalf of the limited liability company to recover a judgment in its favor."
[Emphasis added.] Here, any recovery will not be in its, the LLC's, favor. If a favorable judgment is rendered on the claims in Count I, it will enhance the value of the Marshes' interest in the LLC and be reflected in the amount to be paid them pursuant to the terms of the Consent Order. (For example, if the total value of the breach of fiduciary duty claim is $100,000, the Marshes' interest would be $50,000 or half that amount, subject to any adjustments for lack of marketability and/or control as might be appropriate, which would be paid to them as an enhancement to the value of their share of the LLC.)